UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DANIEL KANE JR., CHARLES MACHADIO,
LEO SERVEDIO, ANTHONY ROSA, MYRA
GORDON, VINCENT PACIFICO, ANDREW ROY
and NIGEL COELHO as TRUSTEES OF THE
UNITED TEAMSTER FUND and as TRUSTEES
OF THE UNITED TEAMSTER PENSION
FUND "A",

REPORT AND
RECOMMENDATION
23 CV 7332 (LDH)(RML)

        Plaintiffs,

   -against-

J. RENELLA PRODUCE, INC.,

        Defendant.
-----------------------------------------------------------------X
LEVY, United States Magistrate Judge:

        By order dated December 23, 2024, the Honorable LaShann DeArcy Hall, United States District Judge, referred plaintiffs' motion for default judgment to me for report and recommendation. For the reasons stated below, I respectfully recommend that plaintiffs' motion be granted.

### BACKGROUND AND FACTS

        Plaintiffs Daniel Kane Jr., Charles Machadio, Leo Servedio, Anthony Rosa, Myra Gordon, Vincent Pacifico, Andrew Roy and Nigel Coelho ("plaintiffs"), as Trustees of the United Teamster Fund ("Welfare Fund") and United Teamster Pension Fund "A" ("Pension Fund") (together, the "Funds") brought this case on October 2, 2023, asserting claims under section 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1145, and section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, to collect delinquent employer contributions to the Funds. (Complaint, dated Sept. 29, 2023 ("Compl."), Dkt. No. 1.) The Funds are "employee benefit plans" established pursuant to section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5), within the meaning of sections 3(1), 3(2), and

3(3), and 502(d)(1) of ERISA, 29 U.S.C. §§ 1002(1), 1002(2), 1002(3) and 1132(d)(1), and are multiemployer plans within the meaning of sections 3(37) and 515 of ERISA, 29 U.S.C. §§ 1002(37) and 1145. (Id. ¶ 9.)

According to the complaint, defendant J. Renella Produce Inc. ("defendant") is a New York corporation with its principal place of business at 351 NYC Terminal Market, Row C, Bronx, New York.[1] (Id. ¶ 13.) At all relevant times, defendant was a party to a collective bargaining agreement (the "CBA") with Local 202 of the International Brotherhood of Teamsters, AFL-CIO (the "Union") which covers, *inter alia*, wages, fringe benefits, and terms and conditions of employment for its employees who are working in covered employment. (Id.

---

[1] Although defendant is located in the Bronx, which is in the Southern District of New York, venue is proper in this district under 28 U.S.C. § 1391, which provides that:

> [a] civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. . . ; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Pursuant to section 1391(c), a corporate defendant resides in any judicial district in the state where it is subject to personal jurisdiction. Thus, even in cases where a defendant maintains its principal place of business in a different New York judicial district than the proposed venue, courts have found that the defendant may still be deemed a resident of the proposed venue. See Wareka v. Dryluxe LLC, No. 21 CV 2422, 2022 WL 2467544, at *1 n.3 (E.D.N.Y. Apr. 7, 2022) (holding that venue was proper in the Eastern District of New York despite the defendant's principal place of business being in the Southern District of New York "since Dryluxe, a New York Corporation, is subject to personal jurisdiction throughout New York State"), report and recommendation adopted, 2022 WL 2753106 (E.D.N.Y. July 14, 2022); Kennedy Stock, LLC v. NLS N.Y. Inc., No. 18 CV 4991, 2019 WL 13096650, at *3–4 (S.D.N.Y. Nov. 18, 2019) (finding that venue was proper in the Southern District of New York even though the defendant's principal place of business was in Queens, since the defendant entity was subject to personal jurisdiction throughout New York State and thus was deemed to reside "in [that] district"), report and recommendation adopted, 2021 WL 5013737 (S.D.N.Y. Oct. 27, 2021).

¶¶ 11, 14.) Pursuant to the CBA, defendant was obligated to remit monthly health, welfare and pension contributions to the Funds on behalf of all its employees working in covered employment on or before the tenth day of each month. (Id. ¶ 15.) The CBA also required defendant to submit monthly contribution reports to the Funds describing the hours and days worked by each of its employees working in covered employment. (Id. ¶ 16.) Plaintiffs allege that defendant failed to remit its required contributions and reports to the Funds on behalf of employee Julian Vidals for the period of October 2022 through July 2023. (Id. ¶ 17.) Plaintiffs seek an award of $34,403.60 in delinquent contributions, plus interest, liquidated damages, and attorney's fees and costs. (Plaintiffs' Memorandum of Law, dated Jan. 23, 2024, Dkt. No. 12-1, at 6.)

## DISCUSSION

### A. Default Standard

The Federal Rules of Civil Procedure prescribe a two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default," as it has done here. FED. R. CIV. P. 55(a). Second, after a default has been entered against the defendant and the defendant fails to appear or move to set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2). To grant a default judgment, the court must ensure that the plaintiff took all the required steps in moving for default judgment, including providing proper notice of the lawsuit to the defendant. BASF Corp. v. Original Fender Mender, Inc., No. 23 CV 2796, 2023 WL 8853704, at *5 (E.D.N.Y. Dec. 22, 2023) ("A court may not enter a default judgment unless it has jurisdiction over the person of the party against whom the

3

judgment is sought, which also means that he must have been effectively served with process." (internal quotation marks and citation omitted)). Here, plaintiffs have demonstrated that they properly served defendant with the summons and complaint. (See Affidavit of Service of Gilbert Rivera, sworn to Nov. 8, 2023, Dkt. No. 7.) Plaintiffs have also shown that they served the Motion for Default Judgment and accompanying submissions on defendant in compliance with Local Civil Rule 55.2(a). (See Declaration of Marc D. Braverman, Esq., dated Dec. 12, 2024, Dkt. No. 12-9, ¶ 9.)

### B. Standing

Standing is an "irreducible constitutional minimum." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). Therefore, the court must evaluate whether plaintiffs have standing even where standing is not challenged. See Garnet v. Ramos Bros. Inc., No. 16 CV 2792, 2017 WL 590323, at *1 (E.D.N.Y. Feb. 13, 2017) (citation omitted). "To establish standing, a plaintiff must prove: '(1) injury in fact, which must be (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) that the injury is likely to be redressed by a favorable decision.'" Hennessy by & through Hennessy v. 194 Bedford Ave. Rest. Corp., No. 21 CV 5434, 2022 WL 4134502, at *2 (E.D.N.Y. Aug. 8, 2022) (quoting Kreisler v. Second Ave. Diner Corp., 731 F.3d 184, 187 (2d Cir. 2013)), report and recommendation adopted, 2022 WL 4134437 (E.D.N.Y. Sept. 12, 2022).

"ERISA is a comprehensive federal law that sets standards for private retirement and health plans, governs their administration, and generally preempts state regulation of benefits plans." Annuity, Pension, Welfare, Training & Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs Loc. 14-14B, AFL-CIO v. C.M. Ashland Constr., 714 F. Supp. 3d 167, 176 (E.D.N.Y. 2024) (citing ERISA § 514(a) (29 U.S.C. § 1144(a))). "ERISA vests the Court with

4

jurisdiction over civil actions brought by fiduciaries of employee benefit plans to enforce provisions of such plans." Id. (first quoting Trs. of Loc. 7 Tile Indus. Welfare Fund v. City Tile, Inc., No. 10 CV 322, 2011 WL 917600, at *1 (E.D.N.Y. Feb. 18, 2011), report and recommendation adopted, 2011 WL 864331 (E.D.N.Y. Mar. 10, 2011); and then citing 29 U.S.C. § 1132(a)(3) (permitting fiduciaries of a plan to bring an ERISA action)). Here, plaintiffs are fiduciaries within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21), and the Funds are multiemployer benefit plans under ERISA. See LoPresti v. Terwilliger, 126 F.3d 34, 40 (2d Cir. 1997) (explaining the broad, functional definition of fiduciaries under ERISA); Trs. of Mosaic & Terrazzo Welfare Pension, Annuity, & Vacation Funds v. Cont'l Floors, Inc., No. 13 CV 1739, 2013 WL 5637492, at *4 (E.D.N.Y. Oct. 15, 2013) ("Section 502 of ERISA (29 U.S.C. § 1132) creates jurisdiction, endowing plan trustees with standing to enforce section 515."); (Compl. ¶¶ 5, 7, 9.)

Section 301 of the LMRA provides a federal cause of action for "violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). The LMRA confers standing on unions and employee benefit funds. See Metal Lathers Loc. 46 Pension Fund v. River Ave. Contracting Corp., 954 F. Supp. 2d 250, 256 (S.D.N.Y. 2013) (employee benefit funds have standing to sue under LMRA for employer's failure to make contributions required under collective bargaining agreement with union); Legal Aid Soc'y v. City of New York, 114 F. Supp. 2d 204, 214 (S.D.N.Y. 2000) ("Section 301 generally grants unions standing to vindicate employee rights pursuant to a collective bargaining agreement[.]"). Accordingly, plaintiffs have established their standing under both ERISA and the LMRA.

5

C. Liability

A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Where a plaintiff moves for default judgment, the court "is required to accept all of [the plaintiffs'] factual allegations as true and draw all reasonable inferences in [the plaintiffs'] favor." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). The court must also "determine whether the [plaintiffs'] allegations establish [the defendant's] liability as a matter of law." Id.

Section 515 of ERISA requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement [to] . . . make such contributions in accordance with the terms and conditions of such plan or agreement." 29 U.S.C. § 1145. In addition, section 301(a) of the LMRA authorizes the court to enforce the obligations imposed by the applicable collective bargaining agreement. See 29 U.S.C. 185(a); Bricklayers Ins. & Welfare Fund v. Doran Tatrow Assocs., Inc., No. 18 CV 2475, 2021 WL 7208997, at *3 (E.D.N.Y. Mar. 15, 2021).

Here, plaintiffs' undisputed allegations establish that defendant is liable to plaintiffs under both ERISA and the LMRA. See Bricklayers Ins. & Welfare Fund v. Primo Brick, Inc., No. 11 CV 5742, 2013 WL 2120338, at *3 (E.D.N.Y. Apr. 3, 2013) ("Plaintiffs allege that defendant failed to make contributions to the Funds. . . .Therefore, defendant's failure . . . constitutes a violation of ERISA. . . .[P]laintiffs allege that defendant failed to remit dues to Local 1 and make required contributions to [the Labor Management Relations Committee]. . . . [T]hus, defendant is liable under Section 301 of the LMRA." (citations omitted)). According to the complaint, defendant "failed and refused to remit its required contributions and reports to the

6

Funds on behalf of J. Renella employee Julian Vidals for the period of October 2022 through July 2023." (Compl. ¶ 17.)  By letter dated July 20, 2023, the Funds demanded that defendant "remit to the Funds its delinquent contributions and reports on behalf of J. Renella employee Julian Vidals for the period of October 2022 through June 2023."  (Id. ¶ 18.)  When defendant failed to cure its default and to remit its July 2023 contributions on behalf of employee Julian Vidals, the Funds sent a follow-up letter dated September 5, 2023 demanding that defendant "remit to the Funds its delinquent contributions and reports on behalf of J. Renella employee Julian Vidals for the period of October 2022 through July 2023."  (Id. ¶ 19.)  To date, the Funds have received no response or contributions from defendant.  (Id. ¶¶ 20–21.)  Thus, plaintiffs have established defendant's liability under ERISA and the LMRA.

### D. Damages

Although the court accepts factual allegations in the complaint for purposes of determining liability, the court must ensure there is proof in the record to support a damages award.  See Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." (citations omitted)); Overcash v. United Abstract Grp., Inc., 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008) ("[E]ven upon default, a court may not rubber-stamp the non-defaulting party's damages calculation, but rather must ensure that there is a basis for the damages that are sought." (citing Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999))).  "The burden is on the plaintiff[s] to establish [their] entitlement to recovery."  Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc., 655 F. Supp. 2d 177, 189 (E.D.N.Y. 2009) (citing Greyhound Exhibitgroup, 973 F.2d at 158).

7

Under ERISA, the damages recoverable for delinquent contributions are enumerated in section 1132(g)(2), which provides that the court shall award the plan:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). I will address each category in turn.

    i. Delinquent Contributions

According to the administrator of the Funds, defendant's "remittance report identified Julian Vidals as an employee working in covered employment for whom contributions are due to the Welfare Fund at the rate of $1,369 per month (which was subsequently increased to $1,465 per month as of January 1, 2023) and to the Pension Fund at the rate of $4.966 per hour as per the terms of the CBA." (Declaration of Barry Reich, dated Jan. 23, 2024 ("Reich Decl."), Dkt. No. 12-2, ¶ 17.) Plaintiffs have submitted a spreadsheet calculating defendant's unpaid contributions as $21,492 for the Welfare Fund and $12,911.60 for the Pension Fund. (Id., Ex. E.) Thus, defendant's delinquent contributions total $34,403.60, and I recommend that plaintiffs be awarded that amount.

    ii. Interest

Pursuant to ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2), if no rate of interest is provided by the applicable plan documents, as is the case here (Reich Decl. ¶ 19), interest is

8

determined by using the rate prescribed under the Internal Revenue Code, 26 U.S.C. § 6621.[2] That rate of interest shall be the sum of the federal short-term rate rounded to the nearest percentage point (currently four percent), plus three percentage points, equaling seven percent (7%).  26 U.S.C. § 6621; see IRS.gov, Rev. Rul. 2025-18, https://www.irs.gov/pub/irs-drop/rr-25-18.pdf (last visited Sept. 8, 2025).  I respectfully recommend that interest be awarded at this rate and that the administrator of the Funds be directed to calculate the interest up to the date of entry of judgment.

### iii. Liquidated Damages

Pursuant to ERISA § 502(g)(2)(C), 29 U.S.C. § 1132(g)(2)(C), plaintiffs are entitled to the greater of the interest on the unpaid contributions or liquidated damages of up to twenty percent (20%) of the unpaid contributions.  Accordingly, I respectfully recommend that plaintiffs be awarded liquidated damages in the amount of twenty percent of the unpaid contributions, totaling $6,880.72.

### iv. Attorney's Fees and Costs

Attorney's fees and costs are mandatory under ERISA.  See 29 U.S.C. § 1132(g)(2)(D); see also Mason Tenders Dist. Council v. Aurash Const. Corp., No. 04 CV 2427, 2006 WL 647884, at *2 (S.D.N.Y. Mar. 15, 2006) ("When a plaintiff prevails in an ERISA action for unpaid contributions, ERISA section 502(g)(2)(D) mandates an award of reasonable attorney's fees and costs of the action, to be paid by the defendant." (quotation marks and citation omitted)).  Courts in this circuit determine the reasonableness of attorney's fees using the "presumptively reasonable fee" standard.  Arbor Hill Concerned Citizens Neighborhood Ass'n v.

---

[2] "Under the LMRA, it is within the court's discretion to award prejudgment interest."  Finkel v. INS Elec. Servs. Inc., No. 06 CV 4862, 2008 WL 941482, *7 (E.D.N.Y. Apr. 4, 2008).

Cnty. of Albany, 522 F.3d 183, 190 (2d Cir. 2008).  The presumptively reasonable fee, also known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required by the case."  Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).  As a threshold matter, the party seeking fees must provide accurate, detailed and contemporaneous attorney time records.  See Scott v. City of New York, 643 F.3d 56, 58–59 (2d Cir. 2011) (per curiam); see also Morin v. Nu-Way Plastering Inc., No. 03 CV 405, 2005 WL 3470371, at *2 (E.D.N.Y. Dec. 19, 2005) ("[A] fee application must be supported by contemporaneous time records that describe with specificity, by attorney, the nature of the work done, the hours expended, and the dates.").  Plaintiffs have not applied for attorney's fees at this time, but state that they "intend to seek their attorneys' fees from the Court within the timeframe allotted by [Federal Rule of Civil Procedure] 54(d)(2) once the Court enters Judgment against Defendant."  (Reich Decl. ¶ 24.)

As for costs, plaintiffs state that they have incurred costs associated with this action totaling $579.50, representing the $402 filing fee and $177.50 for service of the summons and complaint.  (Id. ¶ 23, Ex. F.)  Plaintiffs do not, however, substantiate these requests with any documentation aside from a list of expenditures.  (Id.)  "[I]n the absence of supporting documentation as to any further costs, only [$402] is recoverable."  Baltierra v. Advantage Pest Control Co., No. 14 CV 5917, 2015 WL 5474093, at *12 (S.D.N.Y. Sept. 18, 2015).  Accordingly, I respectfully recommend that plaintiffs be awarded $402 in costs, with leave to submit documentation for the service fees.

     v. Post-Judgment Interest

Finally, under 28 U.S.C. § 1961, plaintiffs are entitled to post-judgment interest on the full judgment amount "from the date of the entry of the judgment, at a rate equal to the

10

weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment." 28 U.S.C. § 1961(a). "The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." Lewis v. Whelan, 99 F.3d 542, 545 (2d Cir. 1996) (citing 28 U.S.C. § 1961(a)). Accordingly, I recommend that plaintiffs be awarded post-judgment interest in accordance with the provisions of 28 U.S.C. § 1961(a).

## CONCLUSION

For the reasons stated above, I respectfully recommend that plaintiffs' motion for default judgment be granted and that plaintiffs be awarded $41,686.32, representing $34,403.60 in delinquent contributions, $6,880.72 in liquidated damages, and $402 in costs. I further recommend that plaintiffs be awarded prejudgment interest at the rate prescribed under the Internal Revenue Code, 26 U.S.C. § 6621, and post-judgment interest in accordance with 28 U.S.C. § 1961(a). Finally, I recommend that plaintiffs be awarded attorney's fees and further costs upon submission of appropriate time records and documentation.

Plaintiffs' counsel is directed to serve copies of this report and recommendation on defendant by regular mail, and to file proof of service with the court within ten days of the date of this report and recommendation. Any objections to this report and recommendation must be filed electronically within fourteen days. Failure to file objections within the specified time waives the right to appeal. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

Respectfully submitted,

*Robert M. Levy*
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
September 10, 2025

11